UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CHERYL KELLOGG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:18-cv-02564-TAB-TWP |
| | ) | |
| BALL STATE UNIVERSITY | ) | |
| d/b/a INDIANA ACADEMY FOR SCIENCE | ) | |
| MATHEMATICS AND HUMANITIES, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

**I.   Introduction**

This matter is before the Court on a motion for summary judgment [Filing No. 47] filed by Defendant Ball State University d/b/a Indiana Academy for Science Mathematics and Humanities ("the Academy"). Plaintiff Cheryl Kellogg alleges that her former employer, the Academy, paid her less than a male colleague for substantially identical work. [Filing No. 44, at ECF p. 2.] Kellogg's amended complaint alleges: (1) sex discrimination under Title VII of the Civil Rights Act and (2) sex-based pay discrimination under the Equal Pay Act. [Filing No. 44, at ECF p. 4-5.] The Academy seeks summary judgment on both claims. For reasons explained in more detail below, the Academy's motion for summary judgment [Filing No. 47] is granted.

**II.    Background**

The following facts are assumed as true for purposes of ruling on the Academy's summary judgment motion: The Academy is a residential school that also has a nonresidential component for accomplished high school juniors and seniors on the campus of Ball State University funded through the Indiana General Assembly. [[Filing No. 49-1, at ECF p. 1](#).] The Academy hired Kellogg in 2006 as a classroom instructor of life science, with a base salary of $32,000. [[Filing No. 55-5, at ECF p. 1](#).] Dr. David Williams served as the Academy's Executive Co-Director at that time and made final hiring decisions. [[Filing No. 49-1, at ECF p. 1-2](#).] At the time the Academy hired Kellogg, she had five years of classroom teaching experience at Northwest College in Powell, Wyoming. [[Filing No. 49-3, at ECF p. 27](#).] In addition, Kellogg spent many years teaching in the medical technology field. [[Filing No. 55-4, at ECF p. 3](#).] Kellogg negotiated her starting salary with Williams and claims that Williams told her that she did not need any more money because her husband worked. [[Filing No. 49-3, at ECF p. 6](#).] Kellogg's ending salary for the 2017-2018 school year was $44,429. [[Filing No. 49-3, at ECF p. 33](#).]

In 2012, the Academy hired Leslie McSparrin, a male, as an instructor of chemistry for the 2012-2013 school year. [[Filing No. 49-1, at ECF p. 3](#).] McSparrin had over 21 years of total teaching experience at the time he came to the Academy. [[Filing No. 49-1, at ECF p. 2](#).] His salary at his previous position was $67,736. [[Filing No. 49-3, at ECF p. 80](#).] He was hired at the Academy for an initial base salary of $58,000. [[Filing No. 49-1, at ECF p. 3](#).]

On March 20, 2017, Kellogg made a complaint via email to John Jacobson, the Dean of Ball State's Teacher's College, which oversees the Academy. [[Filing No. 55-7, at ECF p. 2](#).] Kellogg stated in her email that she wished to discuss "pay inequity in the Science department at

the Indiana Academy." [Filing No. 55-7, at ECF p. 2.] Kellogg specifically referenced McSparrin and his salary, noting that McSparrin's salary was $18,000 higher than her own and her belief that she and McSparrin held similar credentials. [Filing No. 55-7, at ECF p. 2.] In his response, Jacobson listed the name and start date of three other teachers who were hired around the same time as Kellogg: John Marsh, Jeffery Sayers, and Stephanie Nagelkirk. [Filing No. 55-7, at ECF p. 1.] Jacobson pointed out that, over time, each instructor had varying percentage increases in pay. [Filing No. 55-7, at ECF p. 1.] For Kellogg, he noted that she started in 2006 with a salary of $32,000 and over time had received a 36.45% increase. [Filing No. 55-7, at ECF p. 1.] Jacobson noted that McSparrin was hired at later date than Kellogg and at a much higher beginning salary, but that over time, his increase had only been 3.54%. [Filing No. 55-7, at ECF p. 1.] Jacobson then stated, in relevant part:

> The issue is salary compression, which means those who are hired after you began at a higher salary. We see this across campus and try to address this each spring through salary equity adjustments if a salary pool is available and approved by the Board of Trustees. Because the Academy is self-funded via ADM from the Indiana Department of Education, all increases in salary equity, merit, etc. must come from the Academy budget—not from any university funds. The issue with the Academy is that in recent years the Academy budget has not permitted much of a salary raise.

[Filing No. 55-7, at ECF p. 1.]

On August 20, 2018, Kellogg sued the Academy alleging violations of Title VII and the EPA. [Filing No. 1.] The Academy responded by filing the instant summary judgment motion as to all of Kellogg's claims. [Filing No. 47.]

### III. Discussion

The Academy contends it is entitled to judgment as a matter of law as to Kellogg's EPA claim because it has provided "a properly supported 'reason other than sex' which explains the difference in salaries. . . in real-life, gender neutral terms" [Filing No. 48, at ECF p. 1-2] and as to her Title VII claim because it has provided evidence of a "legitimate, non-discriminatory, and non-pretextual explanation" as to why McSparrin earned more than Kellogg [Filing No. 48, at ECF p. 2]. Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must view the facts and draw all reasonable inferences in the light most favorable to Kellogg, the non-moving party in this case. *See, e.g.*, *Driveline Sys., LLC v. Arctic Cat, Inc.*, 936 F.3d 576, 579 (7th Cir. 2019) ("The court views the evidence, and draws all reasonable inferences, in the light most favorable to the nonmoving party.").

#### a. EPA Claim

The EPA "prohibits an employer from discriminating between employees on the basis of sex." *Lauderdale v. Illinois Dep't of Human Servs.*, 876 F.3d 904, 907 (7th Cir. 2017).

> An employee establishes a prima facie claim under the Act by demonstrating a difference in pay despite having a job that requires equal skill, effort, and responsibility as the comparator and a job that is performed under similar working conditions to the comparator. If the employee makes this showing, the burden of proof shifts to the employer to prove some neutral factor that explains the difference in pay. The Act provides four exceptional circumstances when an employer has a permissible basis to pay an employee less than an employee of the opposite sex: (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex.

*Terry v. Gary Cmty. Sch. Corp.*, 910 F.3d 1000, 1008 (7th Cir. 2018) (internal citations and quotation marks omitted).

4

The Academy does not dispute, for purposes of summary judgment, that Kellogg can establish a prima facie case. [Filing No. 48, at ECF p. 11.] Thus, the Academy must state and support one of the above-referenced affirmative defenses. *See id.* The Academy relies on the fourth catchall exception, any factor other than sex. [Filing No. 48, at ECF p. 12.] The Academy sets forth the following reasons as to why Williams, the Academy's Executive Co-Director, hired McSparrin in 2012 at a higher starting salary than Kellogg: extremely positive letters of recommendation, 21 years of prior classroom teaching experience, numerous teaching honors, author of four publications, impressive interview, prior experience teaching AP courses in chemistry and biology, and a high former salary. [Filing No. 48, at ECF p. 12.] In addition, the Academy cites market forces, including the state legislature and salary compression, as the reason why Kellogg earned less than McSparrin. [Filing No. 48, at ECF p. 14-15.]

Kellogg first disputes the Academy's reliance on salary compression to justify the pay disparity. [Filing No. 55, at ECF p. 18.] Kellogg contends that this line of reasoning only serves "to perpetuate past wage discrimination against her by pulling it into the present." [Filing No. 55, at ECF p. 18.] Kellogg cites to *Rizo v. Yovino*, 887 F.3d 453 (9th Cir. 2018), *vacated on unrelated grounds sub. nom Yovino v. Rizo*, __ U.S. __, 139 S. Ct. 706, 203 L. Ed. 2d 38 (Feb. 25, 2019). In *Rizo*, the Ninth Circuit concluded that the "any other factor other than sex" catchall exception "is limited to legitimate, job-related factors such as a prospective employee's experience, educational background, ability, or prior job performance." *Id*. at 460. But *Rizo*, a (vacated) Ninth Circuit decision, is not binding on this Court. *See, e.g., Hubers v. Gannett Co., Inc.*, 16 C 10041, 2019 WL 1112259, at *5 (N.D. Ill. Mar. 11, 2019) ("[U]nless and until the U.S. Supreme Court adopts the Ninth Circuit's view, this Court must follow the Seventh Circuit's holdings in *Lauderdale* and *Wernsing* [*v. Dep't of Human Servs.*, 427 F.3d 466 (7th Cir.

5

2005)], which are to the contrary."). In *Lauderdale*, citing *Wernsing*, 427 F.3d at 468, the Seventh Circuit noted that it has "repeatedly held that a difference in pay based on the difference in what employees were previously paid is a legitimate 'factor other than sex.'" *Lauderdale*, 876 F.3d at 908.[1] Thus, the Academy's reliance on salary compression as one "reason other than sex" comports with current Seventh Circuit precedent.

Kellogg attempts to discount the Academy's use of salary compression as an explanation for the pay disparity by citing to differences in salary between Kellogg and other male instructors who were hired around the same time as Kellogg. [Filing No. 55, at ECF p. 21-22.] But as the Academy points out, Kellogg's deposition testimony and amended complaint limited her list of comparators in this case to McSparrin. [Filing No. 58, at ECF p. 2-4.] While Kellogg's statement of claims and complaint do use plural phrases such as "similarly-situated male colleagues" [Filing No. 45, at ECF p. 2] and "other male employees," [Filing No. 44, at ECF p. 2], McSparrin is the only individual comparator Kellogg specifically names in her amended complaint. [Filing No. 44, at ECF p. 3.] Kellogg's 2017 letter to Jacobson, which launched this entire case, specifically stated only McSparrin's name. [Filing No. 55-7, at ECF p. 2.] It was Jacobson who then opened the door to other male colleagues, citing additional male instructors in his response. [Filing No. 55-7, at ECF p. 1.]

---

[1] The *Lauderdale* court also stated that "[b]asing pay on prior wages could be discriminatory if sex discrimination led to the prior wages, but Lauderdale has not asserted such a claim in this case." *Id.* at 909. In this case, Kellogg alleges in her response that she received a lower starting salary in 2006 than her male colleagues because of her sex. [Filing No. 55, at ECF p. 21.] In support, Kellogg claims that she complained about Williams setting her starting salary at $32,000, but that Williams stated that he would not pay Kellogg more than that because her husband worked. [Filing No. 55, at ECF p. 21.] Since the Court views the evidence in the light most favorable to the non-moving party for purposes of summary judgment, this statement is taken as true. *See Driveline Sys.*, 936 F.3d at 579. While this statement is admissible for purposes of providing background information on the factual circumstances, it cannot establish liability, as these allegations fall well outside the statute of limitations.

Kellogg was aware of these other individuals at the time she filed her amended complaint and at the time of her deposition. Even so, she was the one who limited the scope of her claims to focus on only one comparator—McSparrin. This is evident in multiple portions of her deposition testimony:

>    A.   Others in my cohort were not teaching the same thing that I was teaching.
>    Q.   Okay.
>    A.   So I would assume that theirs would be different.
>    Q.   So others in your -- would Sayers, Marsh, and Nagelkirk be your cohort, or do you have a different definition of your cohort?
>    A.   Cohort, I assume is a group that starts together and finishes together
>    . . . .
>         But my question or my inquiry was about those doing the same job as I do.
>    Q.   And that would only be Les McSparrin; right?
>    A.   Correct.

[Filing No. 49-3, at ECF p. 16.]

>    Q.   Is there anyone else in addition to Les McSparrin whose pay you compared to your own and believed it's evidence of unfair treatment, because you are a woman? Anybody else –
>    A.   I --
>    Q.   -- at the academy?
>    A.   I was only looking at those that do the same job that I do. So I was only looking at Mr. McSparrin's.

[Filing No. 49-3, at ECF p. 19.] Thus, the Court will not evaluate the portion of Kellogg's response that raises arguments related to other male employees further, since Kellogg limited the scope of this case to a comparison between her salary and McSparrin's.

Kellogg also claims that the Academy is manufacturing different reasons for the pay disparity after the fact, for the purposes of litigation, that are nothing more than post-hoc justifications and evidence of pretext. [Filing No. 55, at ECF p. 23.] Kellogg points to Jacobson's email, in which he stated that the problem is that Kellogg started at a lower salary and

7

that this issue is called salary compression, meaning those hired thereafter began at a higher salary. [Filing No. 55-7, at ECF p. 1.] Kellogg contends that the Academy is now presenting explanations that were not presented by Jacobson at the time she complained about pay disparity. She argues that the Court should not consider these explanations now. [Filing No. 55, at ECF p. 23]. The Academy counters by arguing that Jacobson was simply using the words "salary compression" as a descriptive shorthand. [Filing No. 58, at ECF p. 7.]

While Jacobson's email focused largely on salary compression and legislative funding issues, the context of that email is important. Kellogg wrote Jacobson in 2017 specifically asking to address a pay discrepancy between her and her colleague, McSparrin. Kellogg did not raise concerns about her starting salary in that email. [Filing No. 55-7, at ECF p. 2.] Thus, Jacobson understandably tailored his response to the question asked and the information that he had at that point in time. Jacobson did not make the initial salary or hiring decision regarding either Kellogg or McSparrin; that was Williams's role. [Filing No. 49-1, at ECF p. 1.] And Williams based his decision on McSparrin's salary on the factors the Academy now cites—his experience, strong letters of recommendation, past honors and experience teaching AP courses, and his past salary. [Filing No. 49-1, at ECF p. 2.] This is not evidence of pretext.

Accordingly, for the reasons stated above, there are no outstanding issues of genuine fact related to Kellogg's EPA claim. Therefore, the Academy is entitled to judgment as a matter of law on this claim.

### b. Title VII Claim

Kellogg also contends the Academy violated Title VII of the Civil Rights Act. [Filing No. 44, at ECF p. 4-6.]

> Considerable overlap exists between these two statutes [Title VII and the EPA], but they are generally distinguishable in that Title VII requires proof of discriminatory intent, whereas the EPA creates a type of strict liability so that, if Plaintiffs establish that they were paid less than male employees for work requiring equal skill, effort and responsibility, and the employer is unable to attribute the disparate pay to one of the four statutory affirmative defenses, Plaintiffs will prevail.

*Randall v. Rolls-Royce Corp.*, 742 F. Supp. 2d 974, 982-83 (S.D. Ind. 2010), *aff'd*, 637 F.3d 818 (7th Cir. 2011).

> Title VII makes it unlawful for an employer to discriminate against any employee on the basis of sex. The critical question on summary judgment is whether [the plaintiff] presented evidence that would permit a reasonable fact-finder to conclude that the District took a materially adverse employment action against [the plaintiff] because of her sex. Although the oft-cited burden shifting framework from *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed 2d 668 (1973), provides a means of organizing, presenting, and assessing circumstantial evidence, we must consider the evidence as a whole in determining whether to grant summary judgment.

*Terry v. Gary Cmty. Sch. Corp.*, 910 F.3d 1000, 1004-05 (7th Cir. 2018) (internal citations and quotation marks omitted).

Once again, the Academy assumes for purposes of summary judgment that Kellogg can establish a prima facie case of discrimination under Title VII. [Filing No. 48, at ECF p. 17.] The Academy has set forth gender-neutral explanations for the salary differential, citing once more: McSparrin's 21 years of teaching experience, prior salary, overall performance, prior experience teaching AP coursework, letters of recommendation, teaching awards, and publications. [Filing No. 48, at ECF p. 17.] Additionally, the Academy again references "market forces such as small budget increases and a lock-step salary advancement process contributing to salary compression"

9

which adversely impacted Kellogg's salary. [Filing No. 48, at ECF p. 17-18.] Thus, for Kellogg's Title VII claim to proceed, she must demonstrate sufficient evidence that these explanations are a pretext for discrimination. *See, e.g., Lauderdale v. Illinois Dep't of Human Servs.*, 876 F.3d 904, 910 (7th Cir. 2017) ("If the employer articulates a nondiscriminatory reason for the pay discrepancy, the plaintiff must prove that the employer's justification was pretext for a decision made on prohibited criteria (here, sex). If she cannot, her claim fails. An employee can prove a reason was pretextual by showing that the reason was 1) factually baseless, 2) not the employer's actual motivation; 3) insufficient to motivate the action; 4) or otherwise pretextual. On summary judgment, the plaintiff must present evidence that supports an inference that the employer was intentionally dishonest when it gave its nondiscriminatory reason." (Internal citations and quotation marks omitted)).

The Court already concluded there is no basis to find that the Academy's explanation for the salary differential in this case "shifted" or is a pretext for discrimination. Williams's declaration states the exact reasons that the Academy relies on in its motion for summary judgment. [Filing No. 49-1, at ECF p. 2.] And Jacobson's email response to Kellogg was tailored to the question asked and the information he had at that point in time, as an individual who did not make the initial salary or hiring decision regarding either Kellogg or McSparrin. Thus, Kellogg has not demonstrated that the Academy is "piling on, and changing" its reasoning. [Filing 55, at ECF p. 26.]

Kellogg argues that the Academy's reasoning regarding "experience" further illustrates pretext. [Filing No. 55, at ECF p. 26.] Kellogg claims that the Academy misrepresents her level of experience when it states that she had five years of classroom experience. [Filing No. 55, at ECF p. 26.] The Academy responds by pointing to Kellogg's own deposition testimony and an

10

email she sent in June of 2018 to Dawn Miller, principal of the Burris school, in negotiating her starting salary for her current position at Burris, in which Kellogg stated that she had "5 years of teaching experience at Northwest College in Powell Wyoming 1985 through 1989." [Filing No. 49-3, at ECF p. 24.] Kellogg counters in her sur-reply that she did not include her additional clinical experience in that email because it was not relevant to the position she was seeking at Burris, but that it was relevant to the position at the Academy. [Filing No. 59, at ECF p. 9.]

In addition, Kellogg argues that the Academy misleads the Court when it states that there is no indication in the record that Kellogg ever taught or could teach AP classes in chemistry or that she had authorized any publications. [Filing No. 55, at ECF p. 26.] The Court agrees that Kellogg's resume indicates one publication. [Filing No. 49-3, at ECF p. 28.] But Williams noted that McSparrin had authored four publications. [Filing No. 49-1, at ECF p. 2.] In addition, while Kellogg's CV indicates experience in teaching clinical chemistry classes, field research, and participating in university lectures, she did not have direct prior experience of teaching AP chemistry courses at the time she applied for her position in 2006. By contrast, McSparrin had "significant experience" teaching AP classes. [Filing No. 49-1, at ECF p. 2.] Kellogg has failed to designate evidence supporting an inference that the Academy's reliance on "experience" as one of many factors for the pay differential between her salary in 2006 and McSparrin's in 2012 was a pretext to discriminate against her on the basis of sex.

Kellogg raises additional concerns with the Academy's reasoning as related to "former salary" differences between her and McSparrin. [Filing No. 55, at ECF p. 27.] Kellogg notes that while McSparrin's former salary may help the Academy explain why his salary seemed "disproportionately high" compared to other instructors, it does not explain why Kellogg's salary was so low as to compared to other male colleagues or for the difference in pay between Kellogg

11

and McSparrin "for doing the same work." [Filing No. 55, at ECF p. 27.] As noted above, Kellogg has limited her comparators to McSparrin; thus, the Court does not consider arguments relating to any other male colleagues. Additionally, while Kellogg takes issue with the fact that the Academy seemingly did not consider her former salary when negotiating her salary, Kellogg has not clearly articulated what her former salary was or that factoring it in would have had any impact on her starting salary.

Instead, Kellogg once again references Williams's alleged statement regarding Kellogg not needing additional salary because her husband worked. [Filing No. 55, at ECF p. 27-28.] As noted above, while this statement may provide background to her claim, it cannot be the basis of it. Kellogg has not designated evidence indicating that the Academy's claimed partial reliance on a review of candidates' former salary was pretext for discrimination.

Accordingly, Kellogg has not established that a genuine issue of material fact exists or designated evidence from which a jury could find the Academy's gender-neutral explanations for the pay disparity were a pretext for discrimination. Thus, the Academy is entitled to summary judgment as to Kellogg's Title VII claim.

**IV. Conclusion**

The Academy's motion for summary judgment [Filing No. 47] is granted. The Academy is entitled to judgment as a matter of law as to both Kellogg's EPA and Title VII claims. Therefore, this action is dismissed with prejudice.

Date: 2/12/2020

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email