# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT



Everett McKinley Dirksen United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

## NOTICE OF ISSUANCE OF MANDATE

February 5, 2021

To:
Roger A. G. Sharpe
UNITED STATES DISTRICT COURT
Southern District of Indiana
United States Courthouse
Indianapolis , IN 46204-0000

| | |
|---|---|
| No. 20-1406 | CHERYL KELLOGG,<br>Plaintiff - Appellant<br><br>v.<br><br>BALL STATE UNIVERSITY, doing business as INDIANA ACADEMY FOR SCIENCE MATHEMATICS AND HUMANITIES,<br>Defendant - Appellee |

**Originating Case Information:**

District Court No: 1:18-cv-02564-TAB-TWP
Southern District of Indiana, Indianapolis Division
Magistrate Judge Tim A. Baker

Herewith is the mandate of this court in this appeal, along with the Bill of Costs, if any. A certified copy of the opinion/order of the court and judgment, if any, and any direction as to costs shall constitute the mandate.

RECORD ON APPEAL STATUS:     No record to be returned

**NOTE TO COUNSEL:**

If any physical and large documentary exhibits have been filed in the above-entitled cause, they are to be withdrawn ten (10) days from the date of this notice. Exhibits not withdrawn during this period will be disposed of.

Please acknowledge receipt of these documents on the enclosed copy of this notice.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Received above mandate and record, if any, from the Clerk, U.S. Court of Appeals for the Seventh Circuit.

**Date:**                                              **Received by:**

_____2/5/2021_____                          _____*Laura Townsend*_____

                                                       Deputy Clerk, U.S. District Court

form name: **c7_Mandate**(form ID: **135**)

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

Everett McKinley Dirksen United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604



Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov



**FINAL JUDGMENT**

January 5, 2021

Before:

    MICHAEL S. KANNE, Circuit Judge

    MICHAEL Y. SCUDDER, Circuit Judge

    AMY J. ST. EVE, Circuit Judge

| No. 20-1406 | CHERYL KELLOGG,<br>Plaintiff - Appellant<br><br>v.<br><br>BALL STATE UNIVERSITY, doing business as INDIANA ACADEMY FOR SCIENCE MATHEMATICS AND HUMANITIES,<br>Defendant - Appellee |
|---|---|
| **Originating Case Information:** ||
| District Court No: 1:18-cv-02564-TAB-TWP<br>Southern District of Indiana, Indianapolis Division<br>Magistrate Judge Tim A. Baker ||

    The judgment of the District Court is REVERSED, with costs, and the case is REMANDED for further proceedings consistent with the opinion.

    The above is in accordance with the decision of this court entered on this date.

CERTIFIED COPY
A True Copy
Teste:
Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 20-1406

CHERYL KELLOGG,

                        *Plaintiff-Appellant*,

v.

BALL STATE UNIVERSITY d/b/a INDIANA
ACADEMY FOR SCIENCE, MATHEMATICS
AND HUMANITIES,

                        *Defendant-Appellee*.

_____

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 18-cv-02564 — **Tim A. Baker**, *Magistrate Judge*.

_____

ARGUED NOVEMBER 3, 2020 — DECIDED JANUARY 5, 2021

_____

Before KANNE, SCUDDER, and ST. EVE, *Circuit Judges*.

KANNE, *Circuit Judge*. Many plaintiffs seeking to redress discriminatory payment decisions cannot marshal evidence of explicit misconduct. But the plaintiff in this case, Cheryl Kellogg, can and has. Kellogg testified that when the Indiana Academy hired her as a teacher in 2006, its director, Dr. David Williams, told her that she "didn't need any more [starting

Case 1:18-cv-02564-TAB-TWP   Document 71   Filed 02/05/21   Page 5 of 16 PageID #: 695
Case: 20-1406    Document: 37    Filed: 02/05/2021    Pages: 12    (2 of 16)

2                                                          No. 20-1406

salary], because he knew [her] husband worked." Throughout her twelve-year tenure at the Academy, Kellogg suffered the effects of this outdated and improper approach to her starting pay. And in 2018, she sued the Academy for her unjust compensation.

Despite this evidence of unequivocal discrimination, the district court granted summary judgment to the Academy because it proffered what the court believed were undisputed gender-neutral explanations for Kellogg's pay.

This decision was not correct. Williams's statement contradicts the Academy's explanations for Kellogg's pay and puts them in dispute. And for several reasons, it does not matter that Williams uttered the statement so long ago, even well outside the statute of limitations period. Under the paycheck accrual rule, Williams's statement can establish liability because it affected paychecks that Kellogg received within the limitations window. Plus, as an evidentiary matter, Kellogg can rely on Williams's statement to put the Academy's explanations in dispute. We thus reverse the decision of the district court granting summary judgment to the Academy and remand this case for further proceedings.

**I. BACKGROUND**

The following facts are stated in the light most favorable to Kellogg as the nonmoving party. The Indiana Academy for Science, Mathematics and Humanities is a residential high school on the campus of Ball State University. The Academy hired Kellogg in 2006 as a life science teacher. Her starting salary was $32,000.

Kellogg negotiated this figure with the Academy's Executive Co-Director, Dr. David Williams. According to Kellogg,

No. 20-1406     3

Williams told her during those negotiations that "he wouldn't pay [her] any more, because then [she] would be making as much as his Ph.D instructors and … he offhandedly told [her] that [she] didn't need any more money, because he knew [her] husband worked at Ball State, so [they] would have a fine salary."

Many years later, in 2017, Kellogg complained to the Dean of Ball State's Teacher's College, which oversees the Academy, that she received less pay than her similarly situated male colleagues. The Dean responded to this complaint by writing to Kellogg that "[t]he issue [wa]s salary compression, which means those who [we]re hired after [Kellogg] began at a higher salary." The Dean also noted that Kellogg's salary increased by 36.45% during her time at the Academy while her colleagues' salaries increased by less.

Unsatisfied with this answer, Kellogg sued the Academy in 2018 for violating Title VII and the Equal Pay Act by engaging in sex-based pay discrimination. The Academy moved for summary judgment on both claims. The district court granted the motion because the Academy provided what the court believed were undisputed gender-neutral explanations—such as salary compression and qualification differences—for any discrepancy between Kellogg's salary and her colleagues'. In reaching this conclusion, the court found that while Williams's statement about Kellogg's husband "is admissible for purposes of providing background information on the factual circumstances, it cannot establish liability, as these allegations fall well outside the statute of limitations." Kellogg now appeals that decision.

## II. ANALYSIS

We review the district court's summary judgment order *de novo*. *Flexible Steel Lacing Co. v. Conveyor Accessories, Inc.*, 955 F.3d 632, 643 (7th Cir. 2020) (citing *Ga.-Pac. Consumer Prods. LP v. Kimberly-Clark Corp.*, 647 F.3d 723, 727 (7th Cir. 2011)). "Summary judgment is appropriate when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)). "We draw 'all justifiable inferences' in the favor of the nonmoving party." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (citing *AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008)).

Our review of the district court's decision to grant summary judgment to the Academy comes down to one question—are the Academy's nondiscriminatory explanations for Kellogg's pay in dispute?

We hold that they are because the Academy blatantly discriminated against Kellogg by telling her that, because her husband worked, she did not need any more starting pay. Such clear discrimination calls the sincerity of the Academy's rationales into question.

*A. Title VII*

"Title VII makes it unlawful for an employer to 'discriminate against any individual with respect to his compensation … because of such individual's … sex.'" *Lauderdale v. Ill. Dep't of Human Servs.*, 876 F.3d 904, 909 (7th Cir. 2017) (alterations in original) (quoting 42 U.S.C. § 2000e–2(a)(1)). Under this statute, the plaintiff bears the burden of establishing a *prima facie* case of unlawful pay discrimination. *Id.* at 910 (citing

No. 20-1406 5

*Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 750 (7th Cir. 2006)). "If that burden is met, the employer must articulate a 'legitimate, nondiscriminatory reason' for paying the plaintiff less." *Id.* (quoting *Burks*, 464 F.3d at 751).

Then, if the employer does so, the burden shifts back to the plaintiff to call the explanation into question as pretextual. *Id.* (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507–08 (1993); *Burks*, 464 F.3d at 751). Our task in determining whether a proffered explanation is pretextual is to ask if the employer "honestly believed in the nondiscriminatory reasons it offered." *Merillat v. Metal Spinners, Inc.*, 470 F.3d 685, 693 (7th Cir. 2006) (quoting *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 984 (7th Cir. 1999)) (citing *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 323 (7th Cir. 2003)).

Here, the parties agree for purposes of summary judgment that Kellogg established a *prima facie* Title VII claim. Further, the Academy has articulated potential gender-neutral explanations, such as salary compression, for Kellogg's pay. So, the key summary judgment question is whether Kellogg has brought forth evidence to "create a triable issue of fact with respect to her burden of demonstrating that [the Academy's nondiscriminatory] reasons are pretextual." *Id.* at 695.

She has. Kellogg testified that Williams told her that she "didn't need any more [starting salary], because he knew [her] husband worked." That statement, which must be taken as true, creates a dispute over whether the Academy "honestly believed in the nondiscriminatory reasons" that it offered. *Id.* at 693. According to Williams, the Academy didn't honestly believe in them; it paid Kellogg less because of her husband's employment. Indeed, the Academy has not even

6                                            No. 20-1406

tried to argue that the statement does not impugn their proffered explanations.

The Academy instead argues that, for two reasons, we should not consider Williams's statement. First, it tries to brush Williams's statement aside by characterizing it as a "stray remark" with no "real link" to Kellogg's pay because Kellogg described it—in an ironically offhanded way—as "offhanded." *Id.* at 694 ("[I]solated comments that are no more than 'stray remarks' in the workplace are insufficient to establish that a particular decision was motivated by discriminatory animus." (citing *Cullen v. Olin Corp.*, 195 F.3d 317, 323 (7th Cir. 1999)). But Williams's statement was not watercooler talk. It was a straightforward explanation by the Academy's director, who had control over setting salaries, during salary negotiations that Kellogg did not need any more money "because" her husband worked at the University. Few statements could more directly reveal the Academy's motivations.

Second, the Academy argues that we, like the district court, should skirt Williams's statement because it occurred outside the statute of limitations period and thus "cannot establish liability." We disagree for several reasons.

To start, under the paycheck accrual rule, as codified by the Lilly Ledbetter Fair Pay Act of 2009, Williams's statement can "establish liability." Under the Ledbetter Act, an actionable "unlawful employment practice occurs, with respect to discrimination in compensation … each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice." 42 U.S.C. § 2000e–5(e)(3)(A). In other words, "a new cause of action for pay discrimination ar[ises] every time a plaintiff receive[s] a

No. 20-1406 7

paycheck resulting from an earlier discriminatory compensation practice"—even one that "occurr[ed] outside the statute of limitations period." *Groesch v. City of Springfield*, 635 F.3d 1020, 1027 (7th Cir. 2011) (citing *Reese v. Ice Cream Specialties, Inc.*, 347 F.3d 1007, 1013–14 (7th Cir. 2003); *Hildebrandt v. Ill. Dep't of Nat. Res.*, 347 F.3d 1014, 1028 (7th Cir. 2003)).

Our application of this rule in *Groesch* is especially informative. In that case, "the original adverse discrimination decision," which involved a seniority calculation, took place outside the limitations window. *Id.* at 1023. The plaintiffs relied on the paycheck accrual rule to argue that "each time they received a paycheck, they received less than they would have received if they had been treated" equally from the start. *Id.* at 1024. We held that the seniority calculation was "precisely the kind of decision covered by the Ledbetter Act" and reversed the district's court order granting summary judgment to the defendant. *Id.* at 1025.

So too is Williams's decision regarding Kellogg's starting salary "precisely the kind of decision covered by the Ledbetter Act." *Id.* All of Kellogg's pay from the Academy resulted, at least in part, from that decision because the Academy admittedly based Kellogg's later pay on raises from her starting salary. *Lauderdale*, 876 F.3d at 909 ("Basing pay on prior wages could be discriminatory if sex discrimination led to the lower prior wages … ."). Thus, each of Kellogg's paychecks gave rise to a new cause of action for pay discrimination. And like the plaintiff in *Groesch*, Kellogg can rely on Williams's initial discriminatory statement, even though it occurred outside the limitations period, to seek damages from any paychecks that she received within the statute of limitations window.

Next, apart from the paycheck accrual rule, Kellogg can rely on Williams's statement to show that the Academy's explanations are pretextual because "time-barred acts [are allowed] as support for a timely claim." *Fischer v. Avanade, Inc.*, 519 F.3d 393, 401 (7th Cir. 2008) (alteration in original) (citing *West v. Ortho–McNeil Pharm. Corp.*, 405 F.3d 578, 581 (7th Cir. 2005); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)).

For example, in *Davis v. Con-Way Transportation Central Express, Inc.*, the district court concluded that "because certain events cited by [the plaintiff] occurred outside" the statute of limitations window, "they could not be relied upon as evidence of pretext." 368 F.3d 776, 786 (7th Cir. 2004). We disapproved of this decision because when a plaintiff "timely alleges a discrete discriminatory act," "acts outside of the statutory time frame may be used to support that claim." *Id.* (citing *Morgan*, 536 U.S. at 102 ("Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim.")). And we have extended this principle to, at the least, all title VII claims. *West*, 405 F.3d at 581.

In this case, the Academy admits that Kellogg has timely alleged discrete discriminatory acts (that she received discriminatory paychecks within the limitations window). As a result, "acts outside of the statutory time frame," like Williams's statement, "may be used to support that claim" and show that the Academy's explanations were pretextual. *Davis*, 368 F.3d at 786 (citing *Morgan*, 536 U.S. at 102).

B.  *The Equal Pay Act*

Much like Title VII, the Equal Pay Act ("EPA") "prohibits employers from paying employees different wages based on

No. 20-1406 9

gender." *Warren v. Solo Cup Co.*, 516 F.3d 627, 629 (7th Cir. 2008) (citing 29 U.S.C. § 206(d); *Varner v. Ill. State Univ.*, 226 F.3d 927, 932 (7th Cir. 2000)). And as with Title VII claims, the plaintiff bears the initial burden of establishing a *prima facie* case that pay discrimination occurred. *Id.* (citing *Stopka v. All. of Am. Insurers*, 141 F.3d 681, 685 (7th Cir.1998)). But as opposed to the framework of Title VII claims, if the plaintiff meets that initial burden, the burden then shifts to the defendant "to establish one of four statutory defenses." *Merillat*, 470 F.3d at 697 (citing *Cullen v. Ind. Univ. Bd. of Trustees*, 338 F.3d 693, 702 (7th Cir. 2003)). One of those defenses, which is a catch-all provision relevant to this case, is that the pay discrepancy is "based on any factor other than sex." 29 U.S.C. § 206(d)(1).

Just as with Kellogg's Title VII claim, the parties agree for summary judgment purposes that Kellogg has established a *prima facie* EPA claim. The Academy, therefore, must prove that Kellogg's pay was "based on any factor other than sex." *Id.* The Academy again seeks to do this by pointing to various nondiscriminatory explanations for Kellogg's pay. So, once more, the key question is whether Kellogg has "put forth evidence to place the facts surrounding these stated rationales in dispute." *Merillat*, 470 F.3d at 698.

And, once more, Kellogg has. While the Academy says that Kellogg's pay was based on factors other than sex, Williams's discriminatory statement—which, as explained, we cannot overlook—shows otherwise.

That said, under the EPA, the Academy has one extra argument up its sleeve—that the paycheck accrual rule does not apply because the Ledbetter Act explicitly amended four statutes, none of which is the EPA.

Case 1:18-cv-02564-TAB-TWP Document 71 Filed 02/05/21 Page 13 of 16 PageID #: 703
Case: 20-1406 Document: 37 Filed: 01/05/2021 Pages: 12 (10 of 16)

10 No. 20-1406

This argument is unsuccessful because, above all, the paycheck accrual rule does not need to apply for Kellogg to survive summary judgment. As an evidentiary matter, Kellogg can use Williams's statement to put the sincerity of the Academy's purported nondiscriminatory explanations in dispute. *Fischer*, 519 F.3d at 401 (citing *West*, 405 F.3d at 581; *Morgan*, 536 U.S. at 113) ("[T]ime-barred acts [are allowed] as support for a timely claim." (second alteration in original)).

Even so, we take this opportunity to clarify that the paycheck accrual rule does apply to EPA claims. "We need not repeat the well-known history of the [Ledbetter Act]." *Poullard v. McDonald*, 829 F.3d 844, 853 (7th Cir. 2016) (citing *Groesch*, 635 F.3d at 1024). Instead, we will just cut right to our prior holding in *Groesch* that because the Ledbetter Act legislatively reversed the Supreme Court's decision eschewing the paycheck accrual rule in *Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 550 U.S. 618 (2007), it removed "the *Ledbetter* decision as an obstacle to following our earlier precedents, which recognized the paycheck accrual rule for *all* allegations of unlawful discrimination in employee compensation." 635 F.3d at 1028 (emphasis added).

That means what it says, and we follow and apply our holding in *Groesch* here. So the paycheck accrual rule applies to "allegations of unlawful discrimination in employee compensation" under the EPA, just as we have held that it applies to such allegations under 42 U.S.C. § 1983 (even though that too is not listed in the Ledbetter Act). *Id.* "We see no reason … why we would treat a paycheck as a 'discrete discriminatory act' that triggers a new limitations period under Title VII but not under [the EPA] for the purpose of pay discrimination claims." *Id.* at 1027.

No. 20-1406 11

\* \* \*

Williams's alleged discriminatory statement casts doubt on the Academy's nondiscriminatory explanations for Kellogg's salary, and Kellogg can rely on the statement even though Williams uttered it outside the limitations window. The district court's decision to set aside Williams's statement thus requires remand.[1]

Because we remand this case based on Williams's statement, we will not address at length any other parts of the district court's order. But we do want to clarify a final point. In granting summary judgment to the Academy, the district court found that Kellogg could rely on the treatment of just one comparator employee, Leslie McSparrin, to prove her claims. This was so, according to the district court, because Kellogg testified during a deposition that when she complained to the Dean of the Teacher's College in 2017, she "was only looking at Mr. McSparrin's" salary and because Kellogg's amended complaint did not identify other comparators.

This ruling was not correct. To start, the notice pleading standard set forth in Federal Rule of Civil Procedure 8, as

---

[1] We recognize that our decision today regarding Title VII conflicts with our decision in *Dasgupta v. University of Wisconsin Board of Regents*, 121 F.3d 1138, 1140 (7th Cir. 1997) ("[A]n untimely Title VII suit cannot be revived by pointing to effects within the limitations period of unlawful acts that occurred earlier."). *Dasgupta* aligned with the *Ledbetter* decision. *Ledbetter*, 550 U.S. at 637 ("[A]n employer violates Title VII and triggers a new charging period whenever the employer issues paychecks using a discriminatory pay structure."). So, like *Ledbetter*, *Dasgupta* was also partially overruled by the Ledbetter Act.

defined by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), does not require plaintiffs like Kellogg to identify all possible comparators in a complaint. And even if it did, Kellogg's complaint consistently refers to multiple "comparators" and "male employees," indicating her suit did not focus on McSparrin alone.

Next, Kellogg did not cast aside all other comparators at her deposition. True, "parties cannot thwart the purposes of Rule 56 by creating 'sham' issues of fact with affidavits that contradict their prior depositions." *Ineichen v. Ameritech*, 410 F.3d 956, 963 (7th Cir. 2005) (quoting *Bank of Ill. v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1168 (7th Cir. 1996)). But Kellogg is not "contradicting" herself by relying on other comparators. At her deposition, Kellogg stated that when she complained to the Dean in 2017, she "was only looking" at McSparrin's salary. She did not relinquish her ability to bring up other comparators later, and it would be myopic to divine that intention from her answer.

Last, we are not concerned that the Academy will suffer any unfair surprise from Kellogg's reliance on other comparators. The Dean initially pointed out other comparators when responding to Kellogg's 2017 inquiry. And the Academy's counsel brought up the additional comparators and asked questions about them during Kellogg's deposition. So the Academy had clear notice of other comparators that Kellogg may rely on.

### III. Conclusion

We REVERSE the district court's decision and REMAND this case for further proceedings consistent with this opinion.

# United States Court of Appeals

For the Seventh Circuit
Chicago, Illinois 60604

January 28, 2021

**Before**

MICHAEL S. KANNE, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

| | |
|---|---|
| No. 20-1406 | |
| CHERYL KELLOGG,<br>    *Plaintiff-Appellant*,<br><br>*v.*<br><br>BALL STATE UNIVERSITY d/b/a<br>ACADEMY FOR SCIENCE,<br>MATHEMATICS AND HUMANITIES,<br>    *Defendant-Appellee*. | Appeal from the United States District Court for the Southern District of Indiana, Indianapolis Division.<br><br>No. 18-cv-02564<br><br>Tim A. Baker,<br>*Magistrate Judge*. |

**O R D E R**

On consideration of the petition for rehearing filed in the above-entitled cause, all judges on the original panel have voted to deny a rehearing. It is, therefore, ORDERED that the aforesaid petition for rehearing is DENIED.

CERTIFIED COPY
A True Copy
Teste:
Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit